IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHERWOOD BRANDS, INC.,           \*

      Plaintiff,                    \*

v.                                      Civil Case No. RDB 03-1544

                             \*

LEONARD LEVIE, *et al.*,           \*

      Defendants.            \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pending before this Court is the Motion to Alter or Amend Judgment filed by Plaintiff Sherwood Brands, Inc. ("Sherwood" or "Plaintiff") and the Motion for Reconsideration filed by Defendants Leonard Levie and Eleanor Levie (the "Levies" or "Defendants").[1] The issues presented by the pending motions for reconsideration have been fully briefed and no hearing is necessary. (*See* Local Rule 105.6 (D. Md. 2004)). For the reasons stated below, Plaintiff's Motion to Alter or Amend Judgment is DENIED and Defendants' Motion for Reconsideration is DENIED.

---

[1] Plaintiff moved pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, while Defendants moved pursuant to Rule 60(b). Defendants' Motion will be considered under Rule 59(e). *See Virginia Dept. of State Police v. Washington Post*, 386 F.3d 567, 573 n.2 (4th Cir. 2004) (stating that a motion filed within 10 days after a judgment order was entered should have been considered by the district court under Rule 59(e)) (citing *Dove v. Codesco*, 569 F.2d 807, 809 (4th Cir. 1978) ("While not condoning the misstyling of motions, we nonetheless agree that if a post-judgment motion is filed within ten days of the entry of judgment and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled."); *see also United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 n.3 (8th Cir. 2006) ("Rule 59(e) and Rule 60(b)(2) are analyzed identically.").

I       Background

This action was filed by Sherwood on April 24, 2003 in the Circuit Court for Montgomery County, Maryland, against the seven former shareholders and the former Chairman of the Board of Asher Candy, Inc. ("Asher").  On May 27, 2003, Defendants filed a Notice of Removal.  Plaintiff filed a Motion to Remand, which this Court denied on July 29, 2003.

On July 25, 2005, this Court entered an Order approving a Stipulation of Dismissal with Prejudice with respect to Defendants Robert Davidoff, Howard Davidoff, STEPCAP LLC, CMCO, Inc. and James Spampinato.  As a result, the Levies were the only remaining Defendants in this case.  James Howard Fields entered his appearance as counsel for the Levies on August 23, 2005.[2]  Prior to this time, the Levies were represented by other counsel and, for a substantial period of time, chose to proceed *pro se*.

On November 4, 2005, this Court granted Defendants' request to amend the present scheduling order to allow for the filing of a dispositive motion, which Defendants had filed on November 2, 2005.  The Defendants' Motion to Dismiss or Alternatively for Summary Judgment was fully briefed by November 30, 2005, some week and a half prior to the start of trial.  Defendants also filed a Motion in Limine on December 5, 2005 that mirrored its November 2, 2005 Motion to Dismiss or Alternatively for Summary Judgment.

As is illustrated by the docket in this matter, throughout this litigation the Court has made every effort to make itself available to the parties and accommodate the parties' requests.[3]

---

[2]  Nathaniel Edmond Jones, Jr. was added as counsel for the Levies on November 7, 2005.

[3]  The Court permitted a number of the parties' requests for extensions of time and/or to amend the scheduling order in this case.  (*See e.g.,* Paper Nos. 44, 50, 54, 61, 70, 78, 105.)  The

However, the Court clearly indicated that accommodations requested by the parties would not postpone the trial date. *See e.g.*, Paper No. 104 (indicating in a letter to counsel dated November 4, 2005, that the trial date would not be affected by the parties' consent to the extension of time to file dispositive motions in this case). On December 12, 2005, after a hearing, this Court denied the Motion to Dismiss or in the Alternative for Summary Judgment, as well as the Motion in Limine, filed by the Levies and, that same day, the case proceeded to trial. Both parties presented evidence and argument during the eight day[4] non-jury trial held in December 2005.[5]

On March 24, 2006, the Court entered judgment in favor of Defendants and against Plaintiff on Plaintiff's Complaint. In addition, the Court entered judgment in favor of Counterdefendant Sherwood and against Counterplaintiff Leonard Levie as to his counterclaims. Furthermore, the Court entered judgment on Eleanor Levie's Counterclaims in favor of Eleanor Levie as to Count I and Count III, as specified in the Memorandum Opinion, and in favor of Sherwood on Count I, as it related to the "registration rights" claim, and Count IV. Count II of Eleanor Levie's Counterclaim was rendered moot.

---

Court also made itself available for a number of telephone conferences (*see e.g.,* June 5, 2004 Telephone Conference, Aug. 5, 2005 Telephone Conference, Dec. 1, 2005 Telephone Conference), to address discovery disputes, which persisted until the eve of trial with Plaintiff filing a Motion for Protective Order on December 1, 2005.

[4] The case was scheduled to be a four day non-jury trial based on the parties' indications concerning the time needed to try this case. However, based on the large breadth of evidence the parties sought to present at trial, it became evident that four days underestimated the amount of time required by the parties to try this case and the Court adjusted its schedule accordingly.

[5] This Court, with the consent of counsel, also took testimony by means of the videotaped depositions of Carl Schaetzle and Lee Meyers on Sunday December 18, 2005. As all objections were preserved and noted on the video depositions, this examination was conducted in chambers out of the presence of the parties. The parties consented to this procedure to expedite the presentation of evidence in this case.

On April 4, 2006, Defendants filed a Motion for Reconsideration.[6] On April 7, 2005, Plaintiff filed a Motion to Alter or Amend Judgment. On April 19, 2005, Plaintiff filed a Notice of Appeal and, on May 3, 2006, Defendants filed a Notice of Appeal. (*See generally* Fed. R. App. P. 4(a)(4)(B)(i).) On May 5, 2006, the Motions were fully briefed for this Court's review.

II      Standard of Review

This Court has previously recognized that a "motion for reconsideration [pursuant to Fed. R. Civ. P. 59(e)] is granted only in limited circumstances." *Erskine v. Board of Educ.*, 207 F. Supp. 2d 407, 408 (D. Md. 2002) (quoting *Microbix Biosystems, Inc. v. BioWhittaker, Inc.*, 184 F. Supp. 2d 434, 436 (D. Md. 2000)); *see also RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658 (4th Cir. 1992). "[T]he federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits." *Erskine*, 207 F. Supp. 2d at 408 (quoting *White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 451 (1982)). The United States Court of Appeals for the Fourth Circuit has held that a motion for reconsideration may only be granted: " '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *Bogart v. Chapell,* 396 F.3d 548, 555 (4th Cir. 2005) (quoting *United States v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir. 2002)). Rule 59(e) "motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pacific Ins. Co. v. American Nat.*

---

[6] The Memorandum in Support of this Motion was erroneously filed as another Motion. This error was corrected by the clerk's office. (*See* Paper Nos. 131 & 132.)

*Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998) (citing, *inter alia*, 11 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 2810.1 at 127-28 (2d ed. 1995) ("The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

III     Discussion

    A.     Plaintiff's Motion

Sherwood seeks reconsideration of the Court's entry of judgment in favor of Eleanor Levie on Count I and III of her Counterclaim. In particular, Sherwood argues for the first time that Eleanor Levie is in material breach of paragraph 1.10 of the Merger Agreement, or alternatively is entitled to a reduced amount of Sherwood stock. (Pl.'s Mem. Supp. Mot. at 1.) In support of this argument, Sherwood asserts that James Spampinato, in noncompliance with paragraph 1.10 of the Merger Agreement, participated in negotiating a reduction of Asher accounts payable for only $40,000 of the $206,433.04 that was saved by the post-merger entity, Sherwood. (Pl.'s Mem. Supp. Mot. at 2.) Even though James Spampinato was a Sherwood employee after the Merger Agreement and paragraph 1.10 specifically notes that Jim Spampinato and Christopher Willi were "acting jointly for the benefit of the Surviving Corporation," Sherwood contends that his supposed failure to participate in negotiating for the whole $206,433.04 results in Eleanor Levie breaching the Merger Agreement. As a result, Sherwood contends that judgment should be entered against Eleanor Levie on Counts I and III of her Counterclaim. In the alternative, Sherwood requests that the Court alter the judgment to reduce the amount of Sherwood shares Eleanor Levie is entitled to receive under Count I and III to 3,402 shares from 17,554 shares to reflect that she is only entitled to 55% of the $40,000 saved

5

by Jim Spampinato.

As noted by Defendants, Sherwood did not pursue a breach of contract claim in this case. Instead, as discussed in more detail in this Court's earlier Memorandum Opinion in this case, Sherwood alleged that Eleanor Levie was liable for securities fraud and fraudulent inducement, both under Maryland law, and sought both a declaratory judgment and injunctive relief. To ask now, on a motion for reconsideration, for this Court to find that Eleanor Levie breached the Merger Agreement is, quite simply, asking the Court to make a finding on an issue that was never presented by Sherwood at trial.

In addition, Sherwood, also for the first time, argues that Eleanor Levie is entitled to fewer shares because James Spampinato, according to Sherwood, did not participate in negotiating the full $206,433.04. First, paragraph 1.10 makes clear that Jim Spampinato and Christopher Willi were "*acting jointly* for the benefit of the Surviving Corporation." (*See* Pl.'s Ex. 2-A) (emphasis added). The language in paragraph 1.10 does not support Sherwood's interpretation that Eleanor Levie was only entitled to benefit from accounts payable compromises negotiated by Jim Spampinato, a Sherwood employee at the time the accounts payable negotiations occurred. Second, Sherwood has not provided any other legal citation to support its interpretation of this provision and the result Sherwood requests.

In sum, Sherwood has not shown that Rule 59(e) relief is appropriate in this case as it is not demonstrated that the judgment should be amended: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005). Therefore, Plaintiff's Motion to Alter or Amend Judgment is denied.

B.     Defendants' Motion

A. <u>Eleanor Levie's Put Rights Claim (Count I & Count III of her Counterclaim)</u>

Defendants argue that Eleanor Levie should be entitled to put, pursuant to paragraph 4.3 of the Merger Agreement, half of the 17,554 shares of Sherwood Common Stock she received as a result of the Court's March 24, 2006 Order and Judgment. As a result, Ms. Levie seeks the award of an additional $39,496.50 in damages from this Court. Defendants contend that the 17,554 shares of Sherwood Common Stock awarded by this Court, pursuant to paragraph 1.10 of the Merger Agreement, constitute Purchase Price Shares and, therefore, are subject to paragraph 4.3 of the Merger Agreement. As noted in this Court's earlier Memorandum Opinion, section 1.10 of the Merger Agreement states, in relevant part:

> For a period of three months after the Closing Date, Jim Spampinato and Christopher Willi, acting jointly for the benefit of the Surviving Corporation, shall assist the Surviving Corporation in the management of the Closing Date accounts payable and accrued expenses." In the event that such items are satisfied by the Surviving Corporation at less than the face value thereof, then the difference between the amounts payable and the amounts paid shall serve as an upward adjustment to the Purchase Price and shall be paid to the Sellers as promptly as reasonably practicable after November 30, 2002 in shares of Sherwood Common Stock, valued at the February 14 FMV.

(Pl.'s Ex. 2-A.) In their Motion for Reconsideration, Defendants highlight the portion of 1.10 outlining that any savings "shall serve as an upward adjustment to the Purchase Price and shall be paid to the Sellers *as promptly as reasonably practicable after November 30, 2002*." *See id.* (emphasis added.) Defendants argue that "[t]he record is abundantly clear that all of the Sellers, including specifically Eleanor Levie, expected and anticipated that the accounts payable compromises would be disclosed by Sherwood, and the corresponding purchase price adjustment

7

would have been determined and resolved, shortly after November 30, 2002, and <u>certainly prior to April 25, 2003</u>, the one-year anniversary of the Merger Agreement and the latest date on which the Sellers' Put rights vested." (Defs.' Mem. Supp. Mot. at 6) (emphasis in original.)

First, as Defendants note, the "as soon as practicable after November 30, 2002" language also appears in the PPAA (*see* Pl.'s Ex. 7) concerning the accounts payable savings, indicating that payment had not been received, for whatever reason, by February 6, 2003 when the PPAA was fully executed. Second, as noted in the Court's prior Memorandum Opinion, Eleanor Levie declined to testify at trial.[7] Therefore, the assertion that "Eleanor Levie[] expected and anticipated" payment "shortly after November 30, 2002, and certainly prior to April 25, 2003," some two and a half months after the PPAA was executed, is nothing more than an argument by defense counsel and there is no evidence in this case which would support this factual finding.

Indeed, the Court, in its earlier Memorandum Opinion, made no finding as to the date that the accounts payable compromises were completed. Defendants requested a finding of fact that:

> Although duly demanded, Sherwood has failed to fully and completely provide to the Sellers, including Eleanor Levie, the necessary financial information to fully calculate the purchase price adjustments (i.e., the status of the negotiation of the Closing Date Accounts payable).

(Defs.' Prop. Findings of Fact and Conclusions of Law at ¶ 27.) The Court declined to make

---

[7] In fact, during trial defense counsel requested that the Court recess for 45 minutes so that counsel could confer with Ms. Levie and prepare her to testify. The Court granted defense counsel's request. However, when the trial resumed after the 45 minute recess defense counsel informed the Court that Ms. Levie would not be testifying at all.

such a finding.[8] In addition, the Court found that there was no evidence indicating when Ms. Levie believed she should have reasonablely received the shares. (*See* Memo. Op. at 35.)

Defendants contend that "Eleanor Levie was not required to demonstrate by competent

---

[8] To the extent that this requested finding of fact sought for this Court to find that Sherwood improperly failed to disclose this information during the course of this litigation, the Defendants appear to concede in their Motion for Reconsideration that this was not the case. Defendants note in their most recent Motion that "it was only through the litigation initiated by Sherwood . . . that Sherwood was compelled to disclose to the Sellers the information pertaining to accounts payable compromises obtained by Sherwood." (Defs.' Mem. Supp. Mot. at 6-7.) Regardless of Defendants' apparent concession, "[t]he evidentiary spoliation doctrine is a rule of evidence, administered at the discretion of the trial court to respond to circumstances in which a party fails to present, loses, or destroys evidence." *Hartford Ins. Co. of Midwest v. American Automatic,* 23 F. Supp. 2d 623, 626 (D. Md. 1998); *see also Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir. 1995). The rule takes into account the "blameworthiness of the offending party and the prejudice suffered by the opposing party." *Id.* at 626. Indeed, as noted by this Court in its earlier Memorandum Opinion, Sherwood responded to an interrogatory requested by James Spampinato related to the accounts payable issue, stating that Sherwood received a total savings of $206,433.04 as a result of compromises on accounts payable and noting relevant documents as requested. (*See* Defs.' Ex. 39d at Sherwood's Ans. #15.) Indeed, paragraph 30 of Defendants' Proposed Findings of Fact and Conclusions of Law specifically cited this interrogatory answer. In exercising its discretion, this Court declines, once again, to make the finding requested in paragraph 27 of Defendants' Proposed Findings of Fact and Conclusions of Law.

Defendants also appear to argue, in their Motion for Reconsideration, that such a finding is appropriate as a result of Sherwood's purported behavior prior to litigation. Defendants contend that Sherwood "hid[]" and "intentionally delay[ed] disclosure" of the accounts payable information prior to the initiation of litigation in this matter. (Defs.' Mem. Supp. Mot. at 6-7.) Mathew Roseman, counsel for the Sellers, did make a formal demand on Sherwood for this information in March 2003, pursuant to paragraph 6 of the PPAA, which, as previously indicated, was fully executed about a month prior in February 2003. (*See* Defs.'s Ex. 45E L0169.) Apparently the information formally requested by Roseman in March 2003 was not provided by the time this case was filed about a month later in April 2003. Defendants, however, presumptively argue that this information was being maliciously hidden and seek for this Court to find as much by summarily discounting any other possible reason for delay (*e.g.,* that final payment documentation was still being collected from third parties confirming that compromises were made and/or that full payment had been satisfied). The Court declines to make such a finding of bad faith so lightly based on the diminutive evidence presented on this issue, which, instead, is presented by way of defense counsel's theory of the case.

evidence the precise date on which Sherwood actually obtained the accounts payable compromises because 'Purchase Price Shares' is a defined term under Section 1.3 of the Merger Agreement." (Defs.' Mem. Supp. Mot. at 7.) As noted in this Court's earlier Memorandum Opinion, section 4.3 of the Merger Agreement, discussing the Sellers' put rights, states:

> For a period of thirty (30) days commencing on the one-year anniversary of the date hereof, each Seller shall have the right to sell to Purchaser one-half of the Purchase Price Shares issued to him/it on the date hereof at a price of $4.50 per share (the "Put Right"); provided, however, that such Put Right shall only be exercisable if and when (a) the prior day's closing price for the Sherwood Common Stock on the American Stock Exchange was below $4.50 per share, and (b) the Fair Market Value of the Sherwood Common Stock is $4.50 or less, measured from the date of exercise. If the registration statement described in Section 4.2 has not been declared effective, through no fault of the Sellers (whether such fault be the result of actions or the failure to act), by the date that is six months after the date hereof, the Put Right shall commence on the date that is six months from the date hereof.

(Pl.'s Ex. 2-A.) While Defendants focus much of their argument in their Motion for Reconsideration on whether the 17,554 shares are Purchase Price Shares subject to section 4.3,[9] they ignore the first clause of section 4.3 – "For a period of thirty (30) days commencing on the one-year anniversary of the date hereof" – which clearly imposes a time limitation on Eleanor Levie's put right. Quite simply, Defendants did not present sufficient evidence to establish the factual predicate for this Court to conclude that Eleanor Levie was entitled to the 17,554 shares from accounts payable compromises within the time period the Sellers were permitted to

---

[9] The Court need not determine whether the 17,554 Sherwood shares are "Purchase Price Shares" under the terms of the Merger Agreement.

exercise their put rights.[10]  Defendants' Motion to Alter or Amend the Court's judgment on this issue is denied.

      B.    <u>Eleanor Levie's Registration Rights Claim (Count I & Count IV of her Counterclaim)</u>

Eleanor Levie asserts in her Motion for Reconsideration that "the Court has ignored the record evidence in this case that the filing of the instant lawsuit by Sherwood on April 24, 2003, one day before Ms. Levie would have been able to sell her Sherwood shares, placed an unmovable (by Eleanor Levie) cloud on Ms. Levie's title to her Sherwood shares, and rendered such shares completely unmarketable."  (Defs.' Mem. Supp. Mot. at 8.)  As a result, Ms. Levie argues that she is entitled to money damages in connection with the failure of Sherwood to register her Sherwood shares.  Ms. Levie asserts that the appropriate amount of money damages is $168,024.38.

Defendant completely oversimplifies and mischaracterizes the Court's ruling on this issue, which, in part found that "[a]lthough defense counsel argued at trial that Eleanor Levie would have been unable to utilize Rule 144 because no buyer would be interested in her stock as a result of the taint caused by Sherwood's fraud allegations, there was no testimony for Eleanor Levie, who did not testify at trial, or other evidence that she ever even attempted to sell her shares under Rule 144."  (Mem. Op. at 38.)  The Court has not "ignored" Defendants' argument on this point as claimed in their Motion for Reconsideration, but the Court, considering the facts presented and counsel's legal argument, made a determination with which Defendants disagree.

---

[10]  Defendants have not specifically requested an adverse inference in this case, however, to the extent that Defendants are requesting that the Court make such an inference on this timing issue, now, after trial, such a request is denied.  *See supra* at n.8.

Rule 59 motions are not properly used to rehash issues already ruled upon because a litigant is displeased with the result.  *See Tran v. Tran,* 166 F. Supp. 2d 793, 798 (S.D.N.Y. 2001); *Keyes v. National R.R. Passenger Corp.,* 766 F. Supp. 277, 280 (E.D. Pa.1991) (Because of the interests in finality and conservation of judicial resources, Rule 59(e) motions ... "are not at the disposal of an unsuccessful party to 'rehash' the same arguments and facts previously presented . . . ."). Defendants' Motion to Alter or Amend the Court's Judgment on this issue is denied.

      C.      Defendants' Request for Attorneys' Fees

In their Motion for Reconsideration Defendants contend that they are entitled to an award of attorneys' fees and costs.  As Plaintiff highlights, however, Defendants did not move under Rule 54 of the Federal Rules of Civil Procedure.  Defendants contend that, even absent any mention of Rule 54 in their Motion or Memorandum in Support of their Motion, they have clearly satisfied the requirements of Rule 54.  (*See* Defs.' Reply at 5.)  While Defendants have not formally moved under Rule 54, Defendants also failed to submit a memorandum in support of a motion for attorneys' fees that complies with the very specific requirements of Local Rule 109.2 of the Court.  As has been previously noted, both parties have taken an appeal on the underlying judgment in this case.  As a result, this Court will deny Defendants' request for attorneys' fees, to the extent they have moved for such, at this time.  While this action will remain closed pending appeal, this Court will allow this case to be reopened at the conclusion of the appeal process for the limited purpose of considering attorneys' fees.  Such a motion *and* the accompanying memorandum in support must be filed within fourteen days of the issuance of the mandate of the Court of Appeals.  (*See* Local Rule 109.2(b).)

III      Conclusion

For the reasons stated above, Plaintiff's Motion to Alter or Amend Judgment is DENIED and Defendants' Motion for Reconsideration is DENIED.  A separate Order will follow.

Dated: May 15, 2006                                              /s/
                                                                         Richard D. Bennett
                                                                         United States District Judge